| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | |
| UNITED STATES OF AMERICA,<br><br>-against-<br><br>ROHARIL CRUZ and MAX LAMARCHE,<br><br>Defendants. | Docket No. 21-CR-0502 (PMH) |

**DEFENDANTS' JOINT MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS**

FASULO BRAVERMAN & DIMAGGIO, LLP
Samuel M. Braverman, Esq
Fasulo Braverman & Di Maggio, LLP
225 Broadway, Suite 715
New York, New York 10007
(212) 566-6213
SBraverman@FBDMLaw.com

Sean M. Maher, Esq.
The Law Offices of Sean M. Maher, PLLC
2796 Sedgwick Avenue, Suite C1
Bronx, New York 10468
(212) 661 – 5333
SMaher@SeanMaherLaw.com

## Table of Authorities

**Cases**

Russell v. United States, 369 U.S. 749 (1962) ............................................................. 6, 7, 9

Sanabria v. United States, 437 U.S. 54 (1978) ................................................................... 7

United States v. Cruikshank, 92 U.S. 542 (1875) ............................................................ 7, 9

United States v. De La Pava, 268 F.3d 157 (2d Cir. 2001) ................................................. 6

United States v. Gonzalez, 686 F.3d 122 (2d Cir. 2012) ..................................................... 6

United States v. Goodwin, 141 F.3d 394 (2d Cir. 1997) ..................................................... 7

United States v. Hess, 124 U.S. 483 (1888) ........................................................................ 7

United States v. McCray, 7 F.4th 40. (2d Cir. 2021) .......................................................... 9

United States v. Miller, 741 U.S. 130 (1985) ...................................................................... 6

United States v. Panzavecchia, 431 F.2d 440 (5th Cir. 1970) .......................................... 10

United States v. Pirro, 212 F.3d 86 (2d Cir. 2000) .......................................................... 6, 7

United States v. Walsh, 194 F.3d 37 (2d Cir. 1999) ................................................. 6, 9, 10

United States vs. Stringer, 730 F.3d 120 (2d Cir. 2013) ..................................................... 6

**Statutes**

18 U.S.C. § 802(32) .......................................................................................................... 11

18 U.S.C. § 813 ................................................................................................................ 3, 8

18 U.S.C. § 841 ................................................................................................................ 3, 8

18 U.S.C.§ 802 ................................................................................................................. 3, 8

21 U.S.C. 841(b)(1)(A) ....................................................................................................... 2

**PRELIMINARY STATEMENT**

This memorandum of law is submitted in support of Defendant Roharil Cruz's and Defendant Max Lamarche's joint Motion to Dismiss Count One of the Indictment and for additional relief, pursuant to Rule 12 of the Federal Rules of Criminal Procedure.

Defendant Roharil Cruz ("Cruz") and Defendant Max Lamarche ("Lamarche") (together the "Defendants") were charged by indictment with one count of conspiracy to distribute narcotics, in violation of 21 U.S.C. 841(b)(1)(A). Namely, Defendants were charged with conspiring to distribute 100 grams and more of mixtures and substances containing a detectable amount of "para-/ortho-/meta-fluorofentanyl," an alleged analogue of fentanyl.

While para-fluorofentanyl and ortho-fluorofentanyl are scheduled fentanyl analogues under the Controlled Substance Analogue Enforcement Act (the "Analogue Act"), meta-fluorofentanyl is not. It is conceded by the Government that it is not able to distinguish between the three substances (i.e., para-, ortho-, or meta-fluorofentanyl) with the tests it has performed.

Determining the specific substance is crucial to this case because meta-fluorofentanyl is not a controlled substance under the current Congressional statutory scheme. The indictment therefore lacks critical information necessary to put Defendants on notice of the essential elements of the crime of conspiracy to distribute narcotics with regard to a non-Schedule 1 substance. To this end, the Government, knowing that meta-fluorofentanyl is not a controlled substance, has nonetheless prosecuted this case for nearly fifteen months without providing *any* discovery related to meta-fluorofentanyl as a Schedule1 substance or analogue of fentanyl.

For the reasons herein, including violations of Fifth and Sixth Amendment Due Process and Rule 16 discovery obligations, Defendants respectfully submit that the indictment must be dismissed with prejudice.

1

## STATEMENT OF FACTS

On June 4 and June 18, 2022, Defendants Max Lamarche and Roharil Cruz, respectively, were arrested and charged by complaint with conspiracy to distribute narcotics. Roharil Cruz was remanded on the request of the Government, but without prejudice to make a later application for release. On August 5, 2022, Defendants were indicted by a grand jury sitting in the Southern District of New York and charged with one count of conspiracy to distribute narcotics, in violation of 21 U.S.C. § 841(b)(1)(A). See Exhibit 1 [Indictment filed on Aug. 5, 2022 (Doc. No. 9)]. Specifically, Defendants were charged with conspiring to distribute 100 grams and more of mixtures and substances containing a detectable amount of either para-fluorofentanyl, ortho-fluorofentanyl, or meta-fluorofentanyl. Id. at 1 – 2. The Indictment does not give notice to Defendants which of the three substances they are alleged to have conspired to distribute.

Since his arrest, Mr. Cruz has remained in the custody of the Bureau of Prisons pending trial; Mr. Lamarche was able to secure a bond and is at liberty subject to conditions.

Through the course of Rule 16 discovery, the Government produced to Defendants, *inter alia*, a laboratory report from the Yonkers Police Department's forensic laboratory which identifies the substance submitted for testing as either para-fluorofentanyl, ortho-fluorofentanyl, or meta-fluorofentanyl. See Exhibit 2 [Yonkers, New York Police Dept., Forensic Science Lab. Package dated June 4, 2021] at 10 (USAO_00078) (the "Yonkers Lab Report"). However, the Yonkers Lab Report specifically does not indicate which of the three distinct substances is the evidence.

While the Indictment charges Defendants with distributing a fentanyl analogue, the Indictment does not identify the specific analogue; therefore it also does it identify whether the alleged substance is prohibited as listed under the Analogue Act. Ex. 1 ¶ 2. The Indictment only cites the boiler-plate provisions of 18 U.S.C. § 841 and § 846, and does not cite any other relevant provisions of the United States Code, such as 18 U.S.C. § 813 (treatment of controlled substance

2

analogues), 18 U.S.C.§ 802 (defining a "controlled substance analogue") or 18 U.S.C. § 841(b)(1)(B)(vi) (penalizing fentanyl analogues).

Determining the specific substance is critical here for several reasons: First, only two of the three substances in question are scheduled fentanyl analogues according to Congress and the United States Drug Enforcement Agency (the "DEA"). See 21 C.F.R. § 1308.11(b)(64) and §§ 1308.11(b)(70); see Exhibit 3 [DEA, Diversion Control Division, Table of Controlled Substances printed Aug. 2, 2022] (listing para-fluorofentanyl as a controlled substance) at 16; see Exhibit 4 [DEA, Diversion Control Division, Table of Scheduling Actions printed Aug. 2, 2022] (listing ortho-fluorofentanyl as a controlled substance by scheduling action) at 13. The absence of meta-fluorofentanyl from the Table of Scheduling Actions means that it is not expressly, statutorily prohibited, illegal to possess it, a point conceded by the Government. See Exhibit 5 (Joint Letter to Court dated Aug. 10, 2022 where all parties agree that meta-fluorofentanyl is not a listed fentanyl analogue).

From the onset of this prosecution, the Government has proffered that the charged substances (para-, ortho-, and meta-fluorofentanyl) were all scheduled fentanyl analogues, and that, in sum and substances, identifying the specific isomer was inconsequential to this prosecution.[1] For that reason, the Government was unwilling to perform further testing of the substances at the Defendants' request. Defense counsel disagreed with this position, and spent significant time and effort attempting to find a private laboratory capable of distinguishing between the different isomers. In the end, defense counsel was unable to retain a private laboratory, due to either unavailability or technological inability of the laboratories. This leaves the Defendants in a

---

[1] See Ex. 5 ("The parties agree that para-fluorofentanyl and ortho-fluorofentanyl are Schedule 1 substances (internal citations omitted) and the meta-fluorofentanyl is not scheduled substance at this time. The Government believes that whether meta-fluorofentanyl is an analogue of fentanyl under 21 U.S.C. § 841(b)(1)(B)(iv) is an issue of fact for the jury . . . Mr. Braverman and Mr. Maher believe that this case should be dismissed, and therefore motion practice is necessary, because meta-fluorofentanyl is not statutorily proscribed as a fentanyl analogue and does not qualify as a fentanyl analogue under 21 U.S.C. § 802(32), 21 U.S.C. § 813, or United States v. McCray.")

3

paradox-the Government can't say the substance is illegal and has not made an effort to determine such, and the Defendants attempts to prove that it was or was not an illegal substance having failed, no party knows whether a crime was committed or not.

The defense's proffer – that meta-fluorofentanyl is not a fentanyl analogue – had been disputed throughout the first fifteen months of this prosecution. Only when defense counsel requested a motion schedule to make the instant motion did the Government reverse course. Following a conference held before Your Honor on August 3, 2022, the parties conferred privately and the Government now concedes that meta-fluorofentanyl is not a listed fentanyl analogue. See Ex. 5.

The Yonkers Lab Report however does shed light on something important. It is clear from the Yonkers Lab Report that law enforcement and the United States Attorney's Office were actually aware as early as December 9, 2021 that the Yonkers laboratory was unable to determine if the seized alleged narcotics were in fact a controlled substance at all; the specific isomer of the alleged narcotics could not be determined, and since certain isomers are *not* scheduled controlled substances, there in fact may be no controlled substance. The Yonkers laboratory memorialized that the following conversation took place between the laboratory and law enforcement on December 9, 2021:

> Detective Griffith called regarding the weight of all the tablets from FIC-231-21. I explained that the report did not contain a total weight as an identification was not made of a controlled substance. I explained that the drug found had positional isomers that [illegible] which are not controlled and that the YPD FSL could not determine which isomer the compound was. Ex. 2 at 65.

In a subsequent conversation between the laboratory and the Government on January 12, 2022[2], the laboratory notes that it:

---

[2] The Yonkers Lab Report indicates that this conversation took place on "1/12/21." Ex. 2 at 65. Given that the drugs were seized in June 2021, and that a prior conversation between the laboratory and law enforcement took place on December 9, 2021, the defense believes this date is incorrect and that this conversation between the laboratory and the Government actually took place on January 12, 2022, not 2021 as indicted in the report. The Defense reserves

4

> Spoke w/ AUSA and discussed the case regarding the one tablet analyzed and the total weight of the tablets. Explained that no further report would be issued regarding the weight as the laboratory could not determine the isomer for the compound and that the laboratory follows the NY State Public Health Law list of controlled substances.

These conversations make clear that the Government was well-aware of a potential issue as to whether the tablets were Schedule 1 substances under federal law (regardless of their scheduled status under New York state law). Despite this, the Government represented that it would not perform any additional testing, and did not timely retain an expert to determine the same, or to determine whether they would prosecute this action under a "substantially similar" theory of prosecution as a fentanyl analogue. Instead, the Government prosecuted Defendants since 2021 under a theory that all three isomers were controlled substances, despite knowing in 2021 that this conclusion is in fact erroneous.

The Government now claims for the first time on August 10, 2022 that meta-fluorofentanyl is "chemically and pharmacologically similar to fentanyl," (despite not being a ''controlled substance analogue," as specifically defined by Congress in 18 U.S.C. § 802), and that it is able to continue to prosecute this action on that basis. To this end, it is understood that the Government, if permitted by this Court, will seek to call an expert witness to testify as to the chemical and pharmacological properties of meta-fluorofentanyl, as compared fentanyl. Id. No discovery has been produced regarding any such testing, nor expert disclosure made on this point.

---

the right to further inquire as to this apparent discrepancy and reserves any objections it may have to the Yonkers Lab Report.

5

## RELEVENT LAW

A defendant must be provided with sufficient notice of the conduct the Government seeks to prohibit. See United States v. Pirro, 212 F.3d 86 (2d Cir. 2000). Fed. R. Crim. P. 7(c) requires that an indictment "must be plain, concise, and a definite statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). Under the Fifth Amendment, a defendant has a "substantial right to be tried only on charges presented in an indictment returned by a grand jury." United States v. Gonzalez, 686 F.3d 122, 127 (2d Cir. 2012) (citing United States v. Miller, 741 U.S. 130, 140 (1985)).

"An indictment is sufficient if it 'first, contains the elements of the offense charges and fairly informs a defendant of the charges against which he must defend, and, second, enables him to plead an acquittal or conviction bar of future prosecutions for the same offense.'" United States vs. Stringer, 730 F.3d 120, 124 (2d Cir. 2013) (citing Hamling v. United States, 418 U.S. 87, 117 (1974)); see also United States v. De La Pava, 268 F.3d 157, 162 (2d Cir. 2001). While an indictment "need not be perfect," De La Pava, 268 F.3d at 162, "a criminal defendant is entitled to an indictment that states the essential elements of the charge against him." Pirro, 212 F.3d at 91.

An indictment that fails to allege the essential elements of the crime charged offends both the Fifth and Sixth Amendments. Id. at 92 (citing Russell v. United States, 369 U.S. 749, 760 – 61 (1962)). An indictment must contain "some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury," to comport with the requirements of the Fifth Amendment. Id. (citing United States v. Walsh, 194 F.3d 37, 44 (2d Cir. 1999)). As the Supreme Court stated in Russel:

> To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him. Russel, 369 U.S. at 770.

Regarding the Sixth Amendment, a defendant has a right "to be informed of the nature and cause of the accusation against him". Russell, 369 U.S. at 761. An indictment that fails to state the essential elements of the charged crime violates this Sixth Amendment protection. Id. "The indictment must be considered as it was actually draw, not as it might have been drawn." Pirro, 212 F.3d at 92 (citing Sanabria v. United States, 437 U.S. 54, 65 – 66 (1978) ("The precise manner in which an indictment is draw cannot be ignored. . .")).

While indictments generally need only make out the essential elements of an offense, "[w]here the definition of an offence, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species, -- it must descend to particulars." United States v. Cruikshank, 92 U.S. 542 (1875). "Undoubtedly, the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." United States v. Hess, 124 U.S. 483, 487 (1888).

Finally, the timing of the defendant's objection is important to the level of scrutiny employed; a defendant who object to the indictment before trial . . . is entitled to a more exacting review of the indictment than one who waits until after trial." Id. (citing United States v. Goodwin, 141 F.3d 394, 401 (2d Cir. 1997)).

**ARGUMENT**

Here, the Indictment charges, in relevant part, as follows:

3. The controlled substance that ROHARIL CRUZ a/k/a "Roger," and MAX JOSE LAMARCHE, the defendants, conspired to distribute and possess with intent to distribute was 100 grams and more of mixtures and substances containing a detectable amount of para-/ortho-/meta-fluorofentanyl, an analogue of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(A).

As made clear by language above, the Indictment does nothing more than track the most basic elements of the crime of narcotics conspiracy, without any reference to any particular fact, statute or circumstance in this case that would sufficiently notice Defendants that they are being charged with distributing a non-scheduled substance alleged to be an analogue of fentanyl. The Indictment only cites the boiler-plate provisions of 18 U.S.C. § 841 and § 846, and does not cite any other relevant provisions of the United States Code, such as 18 U.S.C. § 813 (treatment of controlled substance analogues), 18 U.S.C.§ 802 (defining a "controlled substance analogue") or 18 U.S.C. § 841(b)(1)(B)(vi) (penalizing fentanyl analogues). It is respectfully submitted that references to the above-listed statutes, or factual or legal allegations regarding the scheduling status of each substance, are necessary to comport with due process notice requirements of the Fifth and Six Amendments.

Moreover, the Indictment entirely fails to allege which of the three substances the Defendants are being charged to have conspired to distribute. This is particularly problematic here where it is uncontroverted one of the substances are not scheduled. The Government is asking this Court, and eventually will be asking the jury, to disregard an essential element of the charged crime – that the substance that defendants are alleged to have conspired to distribute is, in fact, *illegal*.

The Government's "either-or" charging theory fails to comport with the requirement that an indictment contain more than "generic terms" of the statutory language. See Cruikshank, 92 U.S. at 558. The Indictment here fails to "state the species" of the charges, as required by Russel. Id.

8

It lacks any sort of statement of the fact and circumstances to inform the Defendants of the *specific* offense for which they are charged, other than the *pro forma* language of a general narcotics conspiracy.

The case at hand is exactly what the Supreme Court attempted to prevent in deciding Russell. The Indictment here allows the prosecutor to "fill in elements of its case with facts other than those considered by the grand jury." Indeed, the grand jury in this case had no evidence presented to it regarding the chemical and pharmacological properties of meta-fluorofentanyl. This is evident by way of there being no discovery produced by the Government regarding meta-fluorofentanyl. See Ex. 5.

It then begs the question: how was the grand jury able to find that meta-fluorofentanyl was an "analog of fentanyl," if meta-fluorofentanyl is not a scheduled substance, and there was no evidence presented to the grand jury that meta-fluorofentanyl is "chemically and pharmacologically similar" to fentanyl? See United States v. McCray, 7 F.4th 40, 46 (2d Cir. 2021) (holding that a substance can be an analogue of fentanyl if it is, *inter alia*, chemically and pharmacologically similar to fentanyl). To obtain the answer to this question amounts to "allow[ing] the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment." Russel, 369 U.S. at 770.

Allowing the prosecutor here to "fill in elements of its case with facts other than those considered by the grand jury," Walsh, 194 F.3d at 44, or asking the court to guess what was in the minds of the grand jury, Russell, 369 U.S. at 770, would clearly deprive the Defendants the basic protection of due process that the grand jury system was designed to prevent. To this end, allowing prosecutors here to present evidence to a jury regarding the chemical and pharmacological properties of meta-fluorofentanyl as an essential element of the offense would allow Mr. Cruz and Mr. Lamarche to be convicted on the basis of facts not found by and "not even presented to the grand jury which

indicted them." Id. This would result in a clear violation of defendants Fifth and Sixth Amendment rights as set forth in Russell.

Yet, this is precisely what the Government here is attempting to do. They have side-stepped the notice requirements of an indictment, and now are attempting to correct this error by seeking more discovery (expert discovery nonetheless) fifteen months into this prosecution and merely months before trial. Even if permitted (which Defendants contend it should not be), this would not save the already-defective indictment. United States v. Walsh, 194 F.3d 37, 45 (2d Cir. 1999) (citing United States v. Panzavecchia, 431 F.2d 440, 442 (5th Cir. 1970) (holding that a bill of particulars cannot save a defective indictment)).

While the Indictment here describes a type of crime, is falls short of stating facts "specific enough to describe a particular criminal act." Pirro, 213 F.3d at 93. Meta-fluorofentanyl is not a controlled substance and the Government ostensibly did not offer any evidence to the grand jury to the contrary. The Indictment uses broad language tracking the narcotics conspiracy statute generally, without the type of particularity that would give Defendants notice of the specific crime charged. Namely, the Indictment fails to cite any statute defining or prohibiting the distribution of a fentanyl analogue, or that the grand jury found that *all* of the alleged substances were either scheduled or "chemically and pharmacologically similar" to fentanyl.

Allowing the Government at this stage to fill in the gaps of their indictment with additional discovery is not only impermissible, Walsh, 194 F.3d at 45, but would offend the long-standing principal the Supreme Court laid out in Russell, thus violating the Defendants Fifth and Sixth Amendments rights to sufficient notice of the charges lodged against them. Allowing the Government to move forward on a new method of prosecution (i.e., the principle laid out in McCray) could lead to a conviction on the basis of facts not presented to the grand jury. Russel, 369 U.S. at 770. Accordingly, it is respectfully submitted that this Court dismiss count one of the Indictment against

10

Defendants for lack of specificity and for failing to state an offense, pursuant to Fed. R. Crim. P. 12(b).

## **Prejudice and Fundamental Fairness**

Regardless of whether this Court finds the Indictment states an offense or alleges sufficient specifics of the offense, the prejudice to Defendants – by allowing the Government to proceed on this new method of prosecution – cannot be understated.

This matter was presented to the grand jury and prosecuted on the basis that all three substances (para-,ortho-, and meta-fluorofentanyl) were Schedule 1 controlled substances – when in fact that was false. The Government is now seeking a second bite at the apple in changing their method of prosecution to the method laid out in McCray (applying the ordinary meaning to the word "analogue," even if the substance is not a "controlled substance analogue" under 18 U.S.C. § 802(32)). However, the Government was well aware of these issues since at least December 9, 2021 [Ex. 5 at 65], but failed to take any steps to either (1) perform further testing of the substance, (2) produce discovery related to the chemical and pharmacological properties of meta-fluorofentanyl, or (3) file a superseding indictment based on their new method of prosecution.

This Court has excluded time under the Speedy Trial Act and continued this matter in the interest of justice on the express representation that Government would not be seeking any further review or testing of the seized tablets. Continuations were granted, at least in part, to allow the parties to review discovery, contemplate motion practice and to allow the defense to attempt to retain a private laboratory capable of determining the specific isomer of the parent compound fluorofentanyl. Mr. Cruz through his counsel was explicit to this Court that he wished to set a trial date since at least the May 18, 2022 status conference. While Mr. Cruz eventually consented to an adjournment and the exclusion of time on May 18, 2022, it was to give Defendants the opportunity to have an independent

11

laboratory perform testing to determine the specific isomer – <u>not</u> to allow the Government additional time to obtain expert discovery (which it did not even seek at the time).

Mr. Cruz has been incarcerated since June 18, 2021 and the Defendants have been preparing a defense based on the contents of the Indictment and discovery produced by the Government. Prior to August 10, 2022, the Government has not provided any discovery, nor noticed Defendants of any forthcoming discovery, related to the chemical and pharmacological properties of meta-fluorofentanyl and any purported similarities to any controlled substance.

It is respectfully submitted that the Government's untimely notice of additional expert discovery, together with the Government's refusal to perform further testing of the tablets when they knew or should have known that meta-fluorofentanyl is not a scheduled substance, violates the fundamental fairness principles of due process. On this basis alone, the Indictment should be dismissed against Defendants.

Dismissal is further warranted because of Defendants' inability to procure expert testing of the seized pills to independently establish the exact chemical composition of the pills. Defense counsel has made strenuous efforts to retain a private laboratory to test the pills to no avail. At least six private laboratories have informed the defense of their inability to test for the presence of fentanyl analogues. Thus, Defendants will not be able to mount a sufficient scientific challenge to any of the Government's scientific evidence and expert testimony concerning the chemical composition of the pills. Permitting the Government to move forward by prosecuting Defendants under its proposed "either-or" fentanyl analogue theory will violate the Defendants' Fifth Amendment right to due process and Sixth Amendment right to present a defense.

Should this Court find that dismissal is too harsh a remedy, then this Court should preclude the Government from using a fundamentally unfair and untimely discovery device, such as further expert discovery. The Government should be precluded from using at trial any evidence regarding

the chemical and pharmacological properties of meta-fluorofentanyl. That is, the Government should be required to use the proofs that it has disclosed to the defense under Rule 16 to date, rather than allow the Government a second bite at the apple. Permitting the Government to use at trial an untimely expert report would reward the Government for sitting on its hands for fifteen months of this prosecution. The is especially so where the Government was aware, or should have been aware, that meta-fluorofentanyl is not a scheduled substance since the onset of this prosecution.

Defendants and this Court are eager to set a trial date in this matter. Should the Government be afforded an indeterminate amount of time to produce additional discovery, requiring the Defendants to endure further adjournments for an opportunity to review the late disclosure and to retain a rebuttal expert. This will certainly delay Defendants' day in Court, or would put Defendants in the unfair position of having an insufficient amount of time to review discovery and prepare their defense.

## **CONCLUSION**

It is respectfully submitted that the Indictment here lacks specificity and fails to state a specific offense, and fails to sufficiently notice Defendants of the specific facts and circumstances of the charges against them. It is uncontroverted that the grand jury was not presented with any evidence regarding the chemical and pharmacological properties of meta-fluorofentanyl – which is an essential element of distributing a controlled substance or its analogue. Further, it is likely that the legal instructions given to the grand jury were incorrect and mistakenly advised the grand jurors that meta-fluorofentanyl was a scheduled controlled substance. Moreover, the Defendants have been significantly prejudiced by the Governments attempt to reengineer their method of prosecution where the Government knew or should have known that meta-fluorofentanyl is not a scheduled substance. The Government's "either-or" theory of prosecution offends the notice

13

requirements of the Fifth and Sixth Amendments, and fails to comport with the principles of fundamental fairness.

Accordingly, it is respectfully requested that this Court (1) dismiss the indictment for lack of specificity and for failing to state an offense, (2) dismiss the indictment for a violation of the rules of fundamental fairness, or (3) if denied, preclude the Government from using at trial any expert disclosures that have not already been produced.

We thank the Court for its consideration.

By: _____/s/_____
SAMUEL M. BRAVERMAN, Esq.
*Counsel for Roharil Cruz*
Fasulo Braverman & Di Maggio, LLP
225 Broadway, Suite 715
New York, New York 10007
(212)566-6213
SBraverman@FBDMLaw.com


SEAN M. MAHER, Esq.
*Counsel for Max Lamarche*
The Law Offices of Sean M. Maher, PLLC
2796 Sedgwick Avenue, Suite C1
Bronx, NY 10468
(212) 661-5333
SMaher@SeanMaherLaw.com

14